May it please the Court, Counsel. My name is Joseph Guajardo, and I'm an attorney here in Austin, and I'm here today with my co-counsel, Robert Knotson, to represent Maria Tejada in this appeal. I think essentially the issues before this court today can be condensed into two statements. One, did the District Court conduct a de novo review of the objections to the Magistrate's recommendation? And two, were the summary judgment standards followed? It is Tejada's position that the Court did not conduct a proper de novo review according to Rule 72B, and that the Court did not follow established summary judgment standards. Now, I think it's important to note about the de novo issue that this Court has opined that it's important that the Court exercise its own independent judgment. It cannot just merely follow the Magistrate's recommendation. Now, we think that that's exactly what the District Court did, and that's important because without the non-delegable duty that the District Court has to issue a final order, there's no way to know if it actually reviewed the record. Now, as far as summary judgment is concerned, I think at this point it's likely impossible to tell which of those two issues contributed to the error we have here, but it is our position that both of them have brought this issue to this Court. The District Court disregarded evidence in the record that established important fact issues on retaliatory hostile work environment as well as constructive discharge. If you look at the record, one of the key issues was her prior performance. Ms. Tejada was accused of engaging in harassment against other co-workers. Now, she has consistently denied that and has consistently challenged that as true, and the District Court presupposed that as being true. By the time it got to the issue of material adversity, then it had skipped a logical step, in other words, and it arrived at a presumption that the allegations against our client were true. Also, on that same charge of constructive discharge, the District Court found that the claim was untimely. We disagree with that holding because, again, there's evidence in the record that indicates protected activity within the limitation period, and again, the magistrate didn't find that and since the District Court didn't refer to the record itself, that went unnoticed. No, we did not, Your Honor. The adverse employment action, well, the protected activity was complaining of co-worker harassment and being labeled as trouble, and in particular, a co-worker, Piedra, was instructed by upper management not to talk to her, and the reason she came to that decision, or the reason that makes sense, is that he was called into the office on the loudspeaker. She heard him being called into the office through the loudspeaker, and I'm sorry. I believe that's 2010. Oh, no, excuse me, Your Honor. The adverse activity would be in May of 2011. Okay, and that's the second time that Guzman is brought up by Mayfield? Well, that's another adverse action. We contend that at that meeting, there's some dispute in the record as to when that meeting took place. TAB contends that the meeting took place before the limitations period, or after the limitations period, excuse me, indicating a meeting of upper management within the limitations period about Tejada. Now, I think it's a reasonable inference to draw from those facts that upper management had a meeting in preparation for a meeting with Tejada, which would have landed in the limitations period. So, again, that's disputed in this record, and we concede that, and to further support our position, at one point, CEO Mayfield of TAB mentioned that it had been three or three and a half years since her protected activity of complaining against the sexual harassment, which is slightly different than the articulated position in TAB's brief. So, there's no doubt, but that there's testimony and evidence on both sides of the issue, and because of that, I think summary judgment was improvidently granted on that issue. And also, the district court made it very clear that its position was that it did not find any evidence in the record that TAB had any notice that this was going on. Again, we think that the record establishes quite the opposite. In particular, there was an incident of a threat of violence against Tejada in which she complained to management, and thereafter, an investigation was conducted, and in that investigation... Was that the ninth episode? Yes, sir. Yes, Your Honor. Just on the timeline, the ninth episode, did that precede her complaint about Guzman, or was it after? It was after, Your Honor. It was after, but during the episode, the harasser allegedly mentioned that her actions were because she was upset that Guzman had been fired. Now, the district court took exception to that because the court said that that was actually a replete with hearsay, I believe, was the language, and that it was her own self-serving statement. However, at that point in time, I don't know what it would have served her other than just to seek protection. At the time, her lawsuit wasn't even an idea in her mind, and furthermore, there's no indication that TAB investigated that. Had they not believed it, I think they would have indicated some kind of doubts about it or had conducted an investigation and found it to be untrue. Furthermore, the harasser initially denied having made the threat and then subsequently admitted it. So based on the evidence in the record on that issue, I believe that once more,  which brings me to another important point. The district court also mentioned how even if this was all true, it wasn't done in the furtherance of the business. Harassment by coworkers. Harassment by coworkers is typically not actionable. However, what's important to note, especially on the heels of what we've just discussed with Benavides, is that within a month of this threat of violence, she was promoted to assistant supervisor. It's difficult to imagine a more blatant or deliberate support of harassment than to promote a harasser involving a threat of physical violence a month after the threat. I think that sends a very clear message to coworkers that the harassment that they're perpetrating on our client is okay and endorsed by upper management. Furthermore, the court compared this case more like the Stewart case and distinguished it from the Lee case. I believe that that's the opposite. It's true. The language involved in the Stewart case was not nearly as severe or offensive or as damaging as in this case. The language of the Stewart case involved we should be sweet to each other, claims of love, whereas in this case, we've got humiliating and offensive language. These are factors that the Stewart court  Now, the Lee case is important and I believe closer to the case before the court today because it involves ostracism in specific and a lot of the harassment she was subjected to, Tejada, excuse me, made her job a lot more difficult to perform and in some cases impossible. Sometimes she was denied help to get machines repaired. She was assigned to do reworks of other employees and she was isolated. And if you add to that the threat of violence, this case appears much more like the Lee case than the Stewart case. Now, there's... I believe, yes, I think a good case on that could be Arion v. Walmart. I think that's a good case. Again, that case was cited as against Tejada's position, but I believe it's distinguishable for the following reason. In that case, the employee was claiming a subjective dislike of his job duties of the transfer after the alleged protected activity. It didn't involve working in isolation. It didn't involve threats of violence and it didn't involve doing other employees' reworks. So I believe as far as a law on material adversity, I think that's good, but it's distinguishable from the case at bar. The ninth threat that you're emphasizing, that's how many years after Guzman's gone. Well, two questions. Is that before her first EEOC complaint? I believe it's after. No, you're right. It's the 2009 was the threat and I think the EEOC charge is 2010. Is the theory that Benavides, known by management, when that threat occurs, is the temporal connection to the protected activities two years earlier? That's one. Yes, Your Honor. Yes, and I think the fact that Benavides mentioned that that was the motivation behind her harassment brings it squarely into focus. And add to that her promotion a month later and add to that the meeting with Mayfield that we believe took place within the limitations period. One last issue was on retaliatory hostile work environment. For the purposes of deciding the summary judgment, the magistrate recommended it was for purposes of deciding the motion that it was going to be assumed to be a viable cause of action. TAB did not object to that recommendation and I believe that issue is waived for fresh consideration before this court. Insofar as this court would like to hear information about it anyway, I believe that the trend is that that is a viable cause of action and I believe that this court has even indicated, even in affirming summary judgment, that it is a viable cause of action engaging in a prima facie analysis of facts. Has any court said it isn't? The Fifth Circuit is the only circuit to not expressly acknowledge it. But those that have considered or decided that have found it to be? That's right, Your Honor. If there are any questions at this time, if I've left anything unanswered or if there are any other details the court would like, I'd be happy to provide them now. Thank you, Your Honor. Good morning, and may it please the court, counselors. My name is Shafiqa Giratani. I'm pleased to be here on behalf of the Apolli Defendant Travis Association for the Blind, or the Lighthouse. Travis Association for the Blind is a local Austin nonprofit, been around for about 82 years, does federal contracts, and employs hundreds of blind people in order to give them the skills that they need to survive in the workplace. Because of that mission, they tend to work on continuous counseling to give individual skills as opposed to formal discipline. That's exactly what they did with Ms. Tejada. That is what the record shows. Ms. Benfiz did admit to threatening her, right? Yes, Your Honor, and I want to be very clear because you are right to get to the central part of this case, which is this is really a case about two co-workers, two blind women that did not like each other. But what Ms. Tejada has to prove is that that was due to retaliation, and the record shows that that is absolutely not the case. And I'd like to go to Judge Higginson's question about the knife threat. Many of these things that Ms. Tejada talks about as issues happen before there was ever any complaint or any protected activity. I'd like to direct the Court to the record at 130 through 131. And if you'll indulge me for a minute, I will read this part of the record because I think it is very helpful. And what it says is, and what was she doing when she treated you bad, talking about Ms. Benavidez, before Mr. Guzman left? She would call me names. What kind of names would she call you? She called me a cow, and then she said, if I had a knife in my purse, I would have you be sorry for that, you know. And I said, knife? I said, go ahead, no problems. Any other names she called you before she made this complaint against Mr. Guzman? She said, my personal thing was big, and I like that, and I'd like to have big men's whatever, I can't mention it. Other than what you already ascribed, are there any other names that Ms. Benavidez called you? She called me the B word. And all this was prior to you making the complaint against Mr. Guzman? Yes. So the knife threat that you asked about, all of that is prior to any protected activity. Again, that is the record at 130 through 131. These women, yes, absolutely had a personality conflict. But there's absolutely no evidence in the record that any of that was due to retaliation or protected activity. In fact, the evidence is quite to the contrary, because the things that Ms. Tejada complained about happened with this other co-worker that she had a personality conflict about. Guzman was terminated, and Ms. Tejada says that Benavidez on more than one occasion expressed her dislike of Ms. Tejada because of that. Well, Your Honor, what's in the record is that Ms. Tejada never put Tribes Association of Vine on notice that any of these issues that she was having with Ms. Benavidez, that as I just described in the record had been going on for a long time, had anything to do with retaliation. If you look at the record 180 through 183, Ms. Tejada describes exactly what she put the Lighthouse on notice of. And when she's asked, did you ever talk about retaliation, she said she only talked about that before the EEOC. When she was asked, did you tell your supervisor, Ms. Pineda, that these things that are going on with Ms. Benavidez are about retaliation, she specifically says no. What Ms. Tejada hangs her hat on in terms of what the notice is here is one page in the record. It's record 959. It's a report from another supervisor, Mr. Gates. It's in 2009, two years after Mr. Guzman has been terminated, two years before Ms. Tejada quits. All that is on that page, 959, is Ms. Tejada talks about yet another fight that these two ladies are having. This time they've traded barbs, and Ms. Benavidez says, let's clock out and take it outside. Now, they didn't go outside. Mr. Gates interceded before that. But he writes down that Ms. Tejada told him that during this fight they said all sorts of things, and one of the things that was said was Ms. Tejada wasn't doing good work, and that Ms. Benavidez also said during that time, you're the reason Mr. Guzman got fired. That is the absolutely only thing that they have in the record that shows any notice at all. And all that is is a statement that was made in a report. But in that page, if the court would look at it, you will see never does she say, I think she's retaliating against me two years later for something that happened. And there's absolutely no connection between that and any type of constructive discharge. What the court has also held in Hockman and Harville is that in order to provide notice, you have to go through the company's policy. Now, there is a policy that if you are dissatisfied with how anything has been treated, that you can then escalate that to human resources and then escalate it to the head of the lighthouse. It is undisputed in the record that Ms. Tejada absolutely did none of those things. So in terms of the issues with... How is the policy disseminated to people to Ms. Tejada? It is undisputed in the record that Ms. Tejada received the policy. Did she read it? And that she was aware of the policy. Did she read it? They read the policies to the employees. Undisputed she got that. Undisputed that she never followed that policy and escalated it. And that has been addressed by the court in Hockman and in Harville. I thought she twice ends up before the head, the executive director, and each time he brings up Guzman. Guzman. And therefore her argument is that he's connecting right there. It's sort of the same cannabis that Benavides has. The argument is he's threatening her right there for having caused that previously. Right. Your Honor, what she tries to do is get a constructive discharge on a retaliatory hostile work environment claim by focusing on two meetings that she had with the executive director, Mr. Mayfield. Now there's no factual dispute about what happened in that meeting, which is that she went to this meeting and that because there were allegations of harassment against her, that Mr. Mayfield, in talking with her about these allegations of harassment against her, told her that these allegations were serious. She appeared not to understand. And then he said, you remember that you made a complaint against Mr. Guzman. Just as serious as those were taken, those can be taken seriously against you. And that is in the record. She describes it exactly that way. And she also says she was never yelled at, she was never screamed at, but she has made an argument that that is sufficient to get to a hostile work environment. The Fifth Circuit has case law that discussing disciplinary actions with an employee is not sufficient to create a hostile work environment. Also, it was perfectly appropriate, in order to express the seriousness, to bring up Mr. Guzman and what happened with him. The Fifth Circuit has also said, in Ray v. Tandem, that these types of innocuous statements, and the district court properly held as well as the magistrate judge, these types of innocuous statements are not enough to create any type of hostile work environment, nor to lead to constructive discharge. Counsel, you may help me, or counsel for the appellant may want to do it, but I had the impression that at least one time, Mayfield was concerned with her harassment of other employees, and was saying, look what happened to Guzman, because he did what you're being accused of, and we terminated him. Which certainly was not any support for the proposition that Mayfield was responsible for her constructive discharge, if that was what happened. And Judge Riefle, you are absolutely right. That is exactly what is in the record, in terms of how these words were communicated to Ms. Tejada. There isn't any dispute about what was said, and what was said is that, nor is there a dispute that there were allegations of harassment against Ms. Tejada. Now, they dispute whether they were true or not, but those allegations were out there and had been happening for years. And all Mr. Mayfield said to her is, that is serious, and just as Mr. Guzman was terminated, that can happen to you, that's serious. That is simply a discussion about performance issues, which the Fifth Circuit has held time and time again, is not sufficient to create a hostile work environment or constructive discharge. Now, Your Honors, I'd like to turn to the specific claims here. As we asserted before, there has never specifically been recognized in the Fifth Circuit a retaliatory hostile work environment claim. That is what Ms. Tejada proceeds under. She dropped her retaliation claim, it was not appealed, that was dismissed on summary judgment. So, in order for her to proceed, there must be a retaliatory hostile work environment in the Fifth Circuit. It has never been recognized. And if you look at the Hernandez decision cited in our brief, it specifically discusses whether under retaliation, there can be co-worker harassment. And that case specifically holds and discusses some of the very same allegations that Ms. Tejada has about physical threats, about name calling, and says that is not actionable, even post Burlington North, because of the Fifth Circuit's specific standard, different from other circuits, of agency required in law. That case precludes the type of arguments, whether or not there was notice or not, that Ms. Tejada makes. In fact, what that case specifically says is that the Fifth Circuit does not recognize a known or should have known standard for co-worker harassment, that it is not actionable in the Fifth Circuit. And it even goes so far as to reject, in the Sixth Circuit, Hawkins versus Anheuser-Busch. And that is a co-worker retaliatory hostile work environment case. That case is cited by the Fifth Circuit in Hernandez and rejected as the standard in the Fifth Circuit, because it is not recognized under the long standard. And so in order, notice or not, to move forward with a retaliatory hostile work environment, there would have to be a reversal of Hernandez, which specifically rejects the arguments that are put forward by Ms. Tejada. There's also never been recognized by the Supreme Court of the United States any such thing as a retaliatory hostile work environment. And to expand the employment at will when Hernandez specifically rejects it has never been supported by the Supreme Court of the United States is certainly not appropriate in this case. Now, here the lower courts assumed without finding that such a cause of action did exist in the Fifth Circuit. Even under that assumption, Ms. Tejada, the district court, and the magistrate judge correctly found, does not make a case. Now, Ms. Tejada lists a host of things that happened to her, but the requirement is she must show that it is connected to her protected activity. It is unclear, I think, what the protected activity is, but we do know that she made a complaint in 2007 against Mr. Guzman. She didn't quit until 2011. A huge temporal proximity problem that she has, and even with the EEOC charge filed in 2010, still a temporal proximity problem, and there's no forthcoming evidence that anyone knew about the 2010 EEOC charge or that the host of characters that she complains about, she complains about coworkers and supervisors snubbing her, that any of those knew that she made a complaint in 2007, certainly no evidence about 2010. And the Perales and the Johnson, after the declarations, they don't make any of those submissions? No, Your Honor. All that they do, all of those affidavits just talk about talking to Mr. Mayfield about the problems that Benavides and Ms. Tejada were having. None of them connected back to the 2007 complaint or any other protected activity. I thought one of them said that, oh, well, he felt that she's trouble because of the Guzman-Guzman episode. No. No. All they say is that Mr. Mayfield said, stay away from Ms. Tejada. She's trouble. Never, though, she's trouble because of any 2007 complaint. And we know that there are a host of allegations that she's harassing other people. And going back to the Ray v. Tandem case, where there was actually a similar comment of stay away from someone, when there's innocuous meetings with the district court and magistrate judge found that a comment like that cannot be sufficient to find a causal link. Here, where there's no connection back to this 2007 complaint. And remember, these discussions that they're having are years after the fact that the complaint has been made. So no evidence leaking them before and after. There's also no comments in the record by Randall or any of the managers saying anything bad about her sexual harassment complaint or any EEOC charge. In addition, Ms. Tejada, the district court and magistrate judge, properly found, failed to create a genuine issue of material fact that her terms and conditions of employment were affected. Under retaliation standard, that requires a materially adverse employment action, something to dissuade a reasonable person from making or supporting a charge. Here, she complains of insults and threats of suspension. The Fifth Circuit has been clear time and time again. The Stewart case that we cited in our brief goes to this, that ostracism, insults, threats, petty annoyances, all those things are insufficient to be materially adverse. She also, and important in the record, is that although she complains that some of these actions occurred, she actually did file a charge in 2010 showing that she wasn't dissuaded. Additionally, her productivity rose during this time. That is undisputed in the record. We cited a case, the Barrow case in our brief, showing that if your performance continues on, that also shows that there's nothing materially adverse in terms of a term and condition of employment. Was Tejada directed to work with Benavides in the same area on a frequent basis? No, Your Honor. What the record shows is that Ms. Benavides worked in another area. She was the assistant supervisor on Fridays when her boss was out. At all times when this alleged harassment was occurring, there was no evidence that Ms. Benavides was the assistant supervisor at that time. And it is clear that when Ms. Tejada quit that she wasn't working in the same area as Ms. Benavides. They say in their brief in May 2009 she was assigned to the binders section, and that Benavides was in charge of that or was there? She was there. She was there. But she was not in charge there at the time. There was another supervisor, Tim Yates. How long did they have to work in close proximity? Up until when did they work in close proximity with one another? Miss, after the Guzman complaint, Ms. Tejada was taken away from the binders department. Now, occasionally when they need help, she'd be assigned here and there. But there's no allegations in the record that Ms. Benavides was her supervisor during that time or that she was assigned there frequently. In fact, she was in other departments during the rest of her tenure. Infrequently she'd be assigned when they needed help. I'd like to turn finally in the remaining moments I have to the constructive discharge claim and also ask that that be reaffirmed. The magistrate judge and the district court properly found that that claim is time barred. Ms. Tejada testified that she quit because of verbal abuse, threats, name calling, and two meetings with Mr. Mayfield. She admits that all of these occurred prior to April 1, 2011. She admitted in her deposition that the two meetings that she had with Mr. Mayfield occurred two and three years from Mr. Guzman's termination, putting them at 2009 and 2010. Now, she must have brought her EEOC charge within 300 days of any alleged unlawful practice. That means that the cutoff is May 6, 2011 for all of the actions which would have led to her quitting to have occurred. But she admitted during her deposition that every single one of those happened by April 1, 2011, over a month before this cutoff date of May 6, 2011. Now, then, knowing that she talked herself out of her claim, in her motion for summary judgment response declaration, she changed the date of the second meeting. The magistrate judge and the district court correctly found that that will not create a fact issue in the Fifth Circuit, that there's been longstanding law on that. However, even if all of her allegations are considered, there is still no constructive discharge here. Ms. Tejada admits she was never demoted, her salary was never reduced, she had no reduction in job responsibilities. She admits she was not assigned to menial or degrading work. She admits she wasn't assigned to a younger supervisor, was never offered any early retirement. She admits she has no evidence that anything done to her was done deliberately to make her quit. We talked about the Mayfield meeting and the court's precedent that nothing that happened in the Mayfield meeting would be sufficient to lead to constructive discharge, even if we accept her date that it only happened a month before. I will finally say that appellants have made an argument that Ms. Tejada had to rework other individuals' work, and that's menial or degrading work, such that her constructive discharge claim could prevail. First, she never said that that was menial or degrading work to her. That's attorney argument. She actually said she did not quit due to any menial or degrading work. Other individuals were also assigned the exact same rework, so that also will not allow her to survive her constructive discharge claim. And for those reasons, we ask that you affirm both lower courts and affirm summary judgment. Thank you, Your Honors, for your questions and time. Thank you. To address Judge Reveley's concerns about the Mayfield meeting, the versions, there are definitely two versions of the events of that day. It was not confusion on Ms. Tejada's part, but kind of surprise that she was being accused of something that she disagreed with doing at that meeting. It was Mayfield that brought up the protected activity. It was Mayfield that asked if she was no longer in communication with Guzman. It was Mayfield who asked how long it had been since the harassment had occurred. But he said why she was there, did he not? Didn't Mayfield say that he was talking to her because there had been complaints against her? Yes, Your Honor. All right. But I believe that that presupposes the truth of the allegations and might also shed light on the fact that it's a departure from disciplinary policies that they had been engaging in so far. When complaints by her were made, they were treated as suspect. When Guzman harassed her, TAB was on notice that there might have been a romantic relationship between Benavides and Guzman. It was disregarded. And each time TAB talked to Tejada about disciplinary problems, the allegations were assumed to be true. Now, What page of the record can we find her version of what happened at the Mayfield meeting? I believe that would be in her declaration, Your Honor. Now, it is true that there are some guidelines the court follows to determine whether the adverse action is materially adverse. She was, one of her main harassers was promoted on a month after making a threat of violence. She was subjected to ostracism. She was assigned the reworks of other employees, and she was given the label of trouble. I don't see anywhere in the record where I could find an innocuous source for being labeled as trouble, if not for her protected activity. And furthermore, to clear up maybe some confusion that I may have caused during my opening, there are two threats from Benavides against Tejada, one in 2009, which involved the knife, and then another in 2007, excuse me, and then another in 2009 that involved the request to step outside and settle their differences. Now, there is no requirement that Ms. Tejada continue following the procedures at TAB to avail herself of help. When the initial harassment of Guzman occurred, some co-workers told her that no one would believe her, including Guzman. So it's not surprising that she didn't avail herself of those opportunities. Furthermore, this is not a co-worker harassment case. TAB deliberately endorsed harassment of Tejada. The district court drew a sharp distinction between the words complicit and deliberate. I don't see that distinction, and I believe that the record underscores TAB's participation, deliberate participation, if you will, of Tejada's harassment. I believe that it's sort of like a cat's paw argument. It may feel new, a threat against Tejada involving a threat of physical violence. Again, it's a very clear message to send to promote that person a month later. I think this case should be reminded to the district court to proceed to trial and allow the factual disputes and the genuine issues of fact to be decided by a jury. Thank you.